UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GAYTRI KALIA,

      Plaintiff,

v.                                                          Case No. 07-11013
                                                            Hon. Sean F. Cox

ROBERT BOSCH CORPORATION,

      Defendant.
_____

### OPINION AND ORDER

      This matter is before the Court on Defendant's Motion for Summary Judgment. Both

parties have briefed the issues and a hearing was held July 10, 2008. For the following reasons,

the Court **DENIES** Defendant's Motion for Summary Judgment.

### I.    BACKGROUND

      This action arises out of alleged discrimination and retaliation against Plaintiff, Gaytri

Kalia, based on her pregnancy. Plaintiff began working for Defendant as an accountant on

August 15, 2005. When Plaintiff began her employment, her supervisor, Carrie Moyer

("Moyer"), was out on maternity leave. Plaintiff was supervised by Carsten Becker in her

absence. Moyer returned from her maternity leave in November 2005.

      In December 2005, Moyer completed a positive year end performance appraisal for

Plaintiff. In April 2006, Plaintiff received a Performance Recognition Award based in part on

the significant overtime hours she had worked in January and February 2006.

      In or about May 2006, Plaintiff was asked to prepare a draft of a PowerPoint related to an

evaluation of Defendant's auditors. The presentation was being created for the Chief Financial Officer ("CFO"), Ulrich Kirchner. On May 3, 2006, Moyer wrote several remarks on Plaintiff's draft and asked her to incorporate the changes. Plaintiff apparently only incorporated some of the changes and Moyer and her supervisor, Chris Zimmerman, were not satisfied with Plaintiff's work. Zimmerman had to tell the CFO the presentation would not be completed on time. On May 9, 2006, Moyer took the assignment from Plaintiff and completed it herself. Zimmerman and Moyer met on May 11, 2006, allegedly to discuss giving Plaintiff a verbal warning, the first step in Defendant's progressive discipline process.

On May 12, 2006, Plaintiff met with Moyer to give her a mid-year performance evaluation. The evaluation did not include any concerns regarding Plaintiff's performance and did not reference the draft PowerPoint. At this meeting, Plaintiff advised Moyer that she was pregnant.

On May 18, 2006, Moyer and Zimmerman decided to discipline Plaintiff based on the PowerPoint draft assignment, among other things. Plaintiff suffered a miscarriage on May 20, 2006. She was out of work from May 24, 2006 through May 30, 2006. When Plaintiff returned on May 30th, Moyer and Zimmerman claim they gave Plaintiff a verbal warning regarding her performance and attendance. However, Plaintiff claims she was not told this meeting constituted a "verbal warning" under Defendant's discipline policy. The alleged verbal warning was not documented in Plaintiff's personnel file.

On June 22, 2006, Plaintiff received a poor performance competency score from Zimmerman. On July 7, 2006, Defendant claims Moyer addressed performance related concerns with Plaintiff, but Plaintiff denies receiving a verbal warning on July 7th. Plaintiff's personnel

file does not reflect a verbal warning on July 7th.  On August 1, 2006, Plaintiff told Moyer she was again pregnant.  Also on August 1, 2006, Moyer told Plaintiff she needed to work more overtime.  Plaintiff went to Zimmerman concerning her workload and stress and Zimmerman proposed reassigning some of Plaintiff's tasks.  On August 2, 2006, Moyer and Zimmerman decided to proceed to the next step in Defendant's discipline policy and give Plaintiff a written warning.  Moyer sent notes she had composed on August 1st to Zimmerman to add any criticisms of Plaintiff she had.  On August 3, 2006, Moyer and Zimmerman went to Human Resource Manager Bonnie Sherwitz for guidance in the discipline policy.  During this meeting, Moyer apparently told Sherwitz that Plaintiff was pregnant and wanted to use that as an excuse to work less hours.  Moyer also made several allegations about Plaintiff's performance.  Also on August 3, 2006, Plaintiff met with Sherwitz and told her that Moyer told Plaintiff that her morning sickness was her "personal problem" and that she was afraid Moyer would take adverse action against her based on her pregnancy.

On August 7, 2006, Plaintiff was given a written warning regarding concerns with her performance and attendance.  The written warning also refers to prior verbal warnings, which Plaintiff denies she received.  On August 9, 2006, Plaintiff's workload was shuffled and her "lead" position was given to a co-worker.

On August 10, 2006, Plaintiff's attorney delivered a letter to Defendant outlining alleged pregnancy discrimination and retaliation being committed by Moyer.  On August 14, 2006, Sherwitz met with Moyer and Zimmerman and told them about the letter.  They were "frustrated" that Plaintiff had gone to a lawyer.  Sherwitz interviewed Zimmerman and several of Plaintiff's co-workers about their experiences with Moyer and Plaintiff.  One of Plaintiff's four

co-workers, Stacy Gaffke, confirmed Plaintiff's reports that Moyer treated Plaintiff different than the other employees. Nonetheless, Defendant sent Plaintiff's counsel a letter indicating that an investigation had been conducted and revealed no evidence of discrimination or retaliation.

On August 21, 2006, Sherwitz met with Plaintiff and outlined Defendant's expectations of her in writing. Defendant alleges that performance errors continued to occur. Plaintiff alleges that Moyer continued to seek reasons to complain about her. Plaintiff complained to Sherwitz of Moyer's treatment. On September 15, 2006, Plaintiff was given a final written warning.

On September 18, 2006, Plaintiff was supposed to send out a blank package by deleting information from a previous document. Plaintiff failed to delete all of the information and the package she prepared included sensitive and confidential information. The package was caught by Moyer before it was sent out with the confidential information. Moyer and Zimmerman immediately went to Sherwitz seeking Plaintiff's termination. Plaintiff was terminated on September 18, 2006.

On March 8, 2007, Plaintiff filed a Complaint alleging: (1) pregnancy discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, et seq.; and (2) pregnancy discrimination and retaliation in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, et seq. On March 4, 2008, Defendant filed the instant Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III.   ANALYSIS

"Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007). A plaintiff who lacks direct evidence may establish their Title VII claim through circumstantial evidence. *Id.* at 1007-1008. In order to establish a Title VII claim founded on circumstantial evidence, the plaintiff must satisfy the familiar *McDonnell Douglas*[1] burden-shifting framework. *Id.* Plaintiff has the burden of proving a prima facie case of discrimination or retaliation; if a prima facie case is established, the defendant may rebut it by showing a legitimate nondiscriminatory reason for its actions; if defendant is successful, the plaintiff must then show that the defendant's proffered reason is just a pretext for discrimination or retaliation. See *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) and *Scales v. J.C. Bradford and Company*, 925 F.2d 901, 907 (6th Cir. 1991).

### A.   Retaliation

### 1.   Prima facie case

---

[1]*McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of unlawful retaliation under Title VII, the plaintiff must establish that: (1) she engaged in an activity that Title VII protects; (2) defendant knew that she engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *Abbott v. Crown Motor Company, Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* Under the ELCRA, the elements are the same except that the standard for causation is higher. Under the ELCRA, to establish causation the plaintiff must show that her participation in activity protected by the ELCRA was a 'significant factor' in the employer's adverse employment action, not that there was merely a causal link between the two. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523, n.2 (6th Cir. 2008)(citing *Barrett v. Kirtland Community College*, 245 Mich.App. 306 (Mich.App. 2001).

Plaintiff asserts three instances where she claims she engaged in protected activity. First, on August 3, 2006, where in a meeting with Sherwitz she told her she was essentially being treated differently on the basis of her pregnancy. Second, on August 10, 2006, when Plaintiff's counsel sent Defendant a letter indicating that Plaintiff felt she was being discriminated against on the basis of her pregnancy. Third, on September 15, 2006, after receiving a final warning, Plaintiff told Sherwitz, Tony Macari[2] and Moyer that she believed she was given a final warning in retaliation for obtaining a lawyer to complain about Moyer's alleged discrimination. Plaintiff presents evidence that Defendant is aware of these actions. Plaintiff testified as to the August 3rd and September 15th conversations, and Defendant does not dispute that Plaintiff's attorney sent a

_____

[2]The supervisor between Moyer and Zimmerman.

letter. Additionally, Plaintiff was terminated on September 18, 2006, after all three alleged acts of protected activity. Thus, Plaintiff establishes the first three elements of her prima facie case.

The remaining element is whether there is a causal connection between the protected activity and Plaintiff's termination. Defendant contends Plaintiff cannot maintain an action for retaliation because she testified that the only reason she believes she was terminated is the fact that she was pregnant (rather than because she complained of discrimination).[3] [Defendant's Exhibit 42, p.40]. Additionally, Defendant argues that the progressive disciplining of Plaintiff began in May, prior to the alleged protected activity in August.

Plaintiff alleges that causation is established in this case based on the temporal proximity. Plaintiff refers to the four day span between Plaintiff's August 3rd complaint to Sherwitz and her written warning on August 7th; and the three day span between her September 15th complaint and her termination on September 18th. Moreover, Plaintiff was terminated within a month and a half of her first complaint about allegedly discriminatory treatment. Plaintiff also refers to Gaffke's testimony that Plaintiff was treated differently, and testimony from Zimmerman that she and Moyer were "frustrated" when they received the letter from Plaintiff's counsel because they felt that meant Plaintiff was not owning up to any of her own performance issues. [Plaintiff's Exhibit C, p.91].

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of

_____

[3]However, Plaintiff testified in other parts of her deposition that she specifically accused Defendant of retaliation. [Response, Exhibit H, pp.411-412].

retaliation...[b]ut where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. Plaintiff engaged in protected activity, in the form of complaints of disparate treatment, on August 3rd, August 10th, and September 15th, following those dates, Plaintiff received several written warnings and was ultimately terminated on September 18th.

The time lapse of just over one month from the first protected activity and Plaintiff's termination is sufficient evidence of causation for purposes of establishing a prima facie case under Title VII. See *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004)(termination just over three months after filing a discrimination charge was sufficient temporal proximity by itself to infer retaliatory motive for purposes of prima facie case); *Mickey*, 516 F.3d at 525 (citing *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)(cited Tenth Circuit case where one and one half month period between protected activity and adverse action was sufficient by itself to establish causation). See also, *Asmo*, 471 F.3d at 594 (two month period sufficient by itself to establish causation in the context of pregnancy discrimination case).

However, temporal proximity by itself is insufficient to establish causation under the ELCRA. "[I]n order to show causation in a retaliatory discrimination case, '[the] plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action.'" *Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263, 286 (2005); see also *West v. General Motors Corporation*, 469 Mich. 177, 186 (2003)("Something more than a temporal connection between protected conduct and an adverse

employment action is required to show causation where discrimination-based retaliation is claimed."). At the hearing, Plaintiff directed the Court to several exhibits that allegedly support causation in her ELCRA retaliation claim. Plaintiff noted Moyer and Zimmerman's statement after receiving the August 10th letter from Plaintiff's counsel that they were frustrated Plaintiff had obtained a lawyer. [Response, Exhibit C, pp.90-93; Exhibit G, pp.214-216]. Plaintiff also directs the Court to Stacy Gaffke's affidavit wherein she avers that Plaintiff was treated differently. [Response, Exhibit VV]. Plaintiff further directs the Court to her favorable employment record prior to the adverse action. [Response, Exhibit A].

The evidence offered by Plaintiff is sufficient to show causation for purposes of establishing a prima facie case under the ELCRA. In *West*, *supra*, the Court discussed *Henry v. Detroit*, 234 Mich.App. 405 (Mich.App. 1997), where causation was established by relying, in part, on temporal proximity. *West*, 469 Mich. at 186-187. The *West* Court noted that in *Henry*, in addition to temporal proximity, the plaintiff had also shown that his supervisors expressed clear displeasure with his protected activity, and that his employment record was unblemished before the protected activity. *Id.* The *West* Court also indicated that relevant evidence may include whether the decision maker for purposes of discharge was aware of the protected activity. In this case, it is undisputed that Moyer, Macari, Zimmerman and Sherwitz were aware of some, or all, of Plaintiff's protected activity. Further, Plaintiff offers evidence that at least Zimmerman was frustrated by Plaintiff's August 10th letter. [Response, Exhibit C, p.91]. Zimmerman also testified that she commented that Plaintiff "should have better things to spend her money on than an attorney." [Response, Exhibit C, p.92].

### 2. Legitimate nondiscriminatory reason

Defendant offers a legitimate nondiscriminatory reason for terminating Plaintiff's employment. Defendant alleges it gave Plaintiff several verbal and written warnings as part of its progressive discipline policy. Plaintiff's personnel file reflects several written warnings. [Plaintiff's Exhibit A]. Defendant alleges that on September 18, 2006, Plaintiff erroneously attempted to send out a package containing sensitive and confidential information. Plaintiff does not deny that she made the error. Thus, according to Defendant, in light of Plaintiff's several warnings about her performance, and attendance issues, Plaintiff was terminated.

### 3.    Pretext

Defendant having articulated a legitimate nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason is pretext for discrimination. "To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show...either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Peters v. Lincoln Electric Company*, 285 F.3d 456, 471 (6th Cir. 2002)(quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

With respect to the first type of rebuttal, the plaintiff should present evidence that the reasons given by the employer simply did not happen. *Id.* With the second type of rebuttal, "the plaintiff may not rely simply upon his prima facie evidence, but must, instead, introduce additional evidence of prohibited discrimination." *Id.* at 472. The third type of rebuttal ordinarily consists of evidence that other employees were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of

the plaintiff. *Id.* at 471-472. However, with respect to a motion for summary judgment,

"[w]hether judgment as a matter of law is appropriate in any particular case will depend on a

number of factors...[t]hose include the strength of the plaintiff's prima facie case, the probative

value of the proof that the employer's explanation is false, and any other evidence that supports

the employer's case and that properly may be considered on a motion for judgment as a matter of

law." *Id.* at 471 (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-149

(2000)).

In this case, Plaintiff asserts that she establishes pretext in all three respects. [Response,

p.13]. Plaintiff makes the following assertion:

> She has presented evidence that she did not, in fact, have poor performance or
> attendance violations after her protected activity from her own testimony,
> documentary evidence contradicting Moyer's reasons, evidence establishing that
> Moyer did not follow the time off policy with another similarly situated employee
> who was not pregnant and had not opposed illegal discrimination, and from the
> very compelling testimony of a former co-worker, Stacy Gaffke who testified to
> obvious disparate treatment of Kalia. Plaintiff has also "indicted" the credibility
> of Bosch's reasons by demonstrating that "the sheer weight of the circumstantial
> evidence of retaliation makes it 'more likely than not' that the employer's
> explanation is a pretext of a cover-up."

[Response, p.13]. In addition to the temporal proximity, Plaintiff directs the Court to several

exhibits. Plaintiff submits an email where Zimmerman criticizes a letter Plaintiff sent out on

September 12, 2006, to several employees regarding financial statements. [Response, Exhibit

NN]. Zimmerman copied Macari on the email. Moyer responded that she had not seen the letter

prior to it going out and that she would "take care of it." *Id.* However, Plaintiff also includes an

identical letter sent by Moyer on June 1, 2006, for which she was apparently not criticized. *Id.*

Plaintiff also includes an email exchange where it appears that Plaintiff's co-worker, Elizabeth

Taylor, asked her how to spell something. Plaintiff did not know either, so she asked another co-

worker.  Moyer apparently found out about Plaintiff's question and emailed Taylor to see if Plaintiff was seeking help on her work.  Taylor responded that she was but that she "blew her off," but also indicated that she was the one who wanted the correct spelling. [Response, Exhibit LL].  Plaintiff's evidence does not show she was disciplined for asking how to spell something, rather than for Taylor's statement that she had sought help for her assignment.

Plaintiff also notes that her only error in preparing the blank package she was supposed to create was that she forgot to remove one line.[4] [Motion, Exhibit 35].  Plaintiff submits the testimony of her co-worker, Gaffke, who claims she made similar mistakes and was not disciplined. [Response, Exhibit U, pp.196-197].  Plaintiff also submits several other emails purporting to show that Plaintiff was the only one of her colleagues disciplined for certain actions. [Response, Exhibit Z, Exhibit QQ, Exhibit RR].

Finally, with respect to attendance, Plaintiff claims Moyer falsely accused her of being frequently tardy.  Moyer averred that Plaintiff's attendance played a role in her termination. [Motion, Declaration of Moyer, ¶8].  Sherwitz testified that Moyer's notes claimed that Plaintiff was late on average three times per week. [Response, Exhibit D, pp.133-134].  Sherwitz further testified that the company does not track tardiness and it would be the manager's responsibility to track whether people are tardy. [Response, Exhibit D, p.134].  Plaintiff points out that Moyer's handwritten calendar entries do not support her claim that Plaintiff was tardy on average three times per week.[5] [Response, Exhibit K].

_____

[4]It also appears Plaintiff forgot to remove a figure several pages further. [Motion, Exhibit 35; Response, Exhibit U, p.196].

[5]Plaintiff does not direct the Court to any testimony from Moyer that she kept track of tardiness on this calendar.  However, there is a question of fact because there are several entries

Defendant does not address this evidence in turn. Rather, Defendant argues that the discipline began before the alleged protected activity. Defendant cites the alleged verbal warnings given to Plaintiff on May 30, 2006 and July 7, 2006. Defendant also argues that even if Plaintiff has adduced some evidence that Defendant's proffered reasons for her termination are untrue, Plaintiff still has not established pretext. Defendant relies on *Reeves*, 530 U.S. at 148:

> Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant uncontroverted independent evidence that no discrimination had occurred.

(emphasis original). According to Defendant, this is one of the cases contemplated by *Reeves*. However, Defendant failed to identify where the record conclusively revealed some other nondiscriminatory reason for Plaintiff's termination, in light of Plaintiff's evidence that other employees were not disciplined for the sort of mistakes made by Plaintiff and that she did not have the attendance record Moyer claimed. Defendant also does not indicate what "abundant uncontroverted independent evidence" shows that discrimination did not occur. Defendant's contention that none of its other female employees have complained of pregnancy related

---

for Plaintiff and Taylor indicating they were "late."

discrimination is irrelevant with respect to Plaintiff's retaliation claim.[6]

In this case, Plaintiff creates a question of fact regarding whether Defendant's nondiscriminatory reason for terminating her is pretext for retaliation. The Court must accept Plaintiff's evidence as true, draw inferences in her favor, and may not weigh the evidence. See *Cox*, *supra*. In addition to the temporal proximity between Plaintiff's protected activity and the adverse action, Plaintiff submits evidence that she was treated differently than her similarly situated co-workers when she was disciplined for things that they were not.[7] Plaintiff also submits evidence that Moyer falsely accused her of having a poor attendance record, which was one of the factors in her termination. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim for retaliation in violation of Title VII or the ELCRA.

### B. Disparate Treatment

#### 1. Prima facie case

Plaintiff alleges she was unlawfully terminated based on her pregnancy. To establish a prima facie case of pregnancy discrimination, the Plaintiff must show: (1) she was pregnant; (2) she was qualified for her position; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision. *Tysinger v. Police Dept. of the City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006)(citing *Cline v. Catholic*

---

[6]The issue with respect to this claim is not whether Plaintiff was in fact discriminated against based on her pregnancy, but whether she was retaliated against for complaining that she was being discriminated against.

[7]There may be some issue as to whether Plaintiff's co-workers Taylor and Gaffke were similarly situated because they were not embroiled in the progressive discipline policy. However, because Plaintiff alleges the verbal and written warnings themselves were the result of discrimination and retaliation, they will not be held against her in establishing that she was treated differently than her co-workers.

*Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)).  The prima facie requirement is not "onerous" and is not meant to "stymie" plaintiffs, but is meant to eliminate the most common nondiscriminatory reasons for an employer's adverse decision.  *Cline*, 206 F.3d at 660.

It is undisputed that Plaintiff was pregnant at the time of her termination, and Defendant was aware of her pregnancy.  Further, it is undisputed that Plaintiff suffered an adverse employment action when she was terminated.  Thus, Plaintiff establishes the first and third elements of her prima facie case.

### a.    Was Plaintiff qualified for her position?

Defendant argues that Plaintiff was not qualified for her position based on her poor performance and attendance.  Plaintiff contends that "the Sixth Circuit no longer requires a discrimination plaintiff to show that she has satisfied her employer's legitimate expectations in order to establish a prima facie case." [Response, p.17].  Plaintiff relies on *Cline*, 206 F.3d at 660.

Plaintiff is incorrect.  The *Cline* court held "[i]n a termination case...a plaintiff meets the second prong by showing that she was performing 'at a level which met her employer's legitimate expectations.'" *Cline*, 206 F.3d at 658.  In the passage referred to by Plaintiff, the *Cline* court held that by relying on an employer's nondiscriminatory reason as a predicate for finding the plaintiff was not qualified, the court conflates the distinct stages of the *McDonnell Douglas* analysis.  *Id.* at 660.  Thus, the court ruled, "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Id.* at 660-661.  The *Cline* court cited several

cases with approval where courts treated alleged performance problems and unsatisfactory reviews offered by the defendant as a nondiscriminatory reason for termination rather than as a factor indicating the plaintiff was not qualified. *Id.* at 664 (citing cases).

In this case, Defendant asserts that Plaintiff became unqualified for her position after she returned from a trip to India and her performance and attendance deteriorated. Defendant relies on this same argument for its nondiscriminatory reason for terminating Plaintiff's employment. Thus, pursuant to *Cline*, this Court does not consider Defendant's argument and looks only to Plaintiff's independent evidence of qualification.

Plaintiff has a bachelor's degree in accounting. [Plaintiff's Exhibit A, p.47]. Plaintiff submits her initial Performance Review from December 2005 which was favorable. [Plaintiff's Exhibit A, p.23-28]. The Performance Review states that Plaintiff's overall rating is "within expectations" and that Plaintiff has "a very bright future here at Bosch." *Id.* at p.27. Plaintiff submits evidence that in April 2006 she received a Performance Recognition Award, which included a $1000 bonus. [Plaintiff's Exhibit C, pp.36, 40-41]. Plaintiff submits a form used by Moyer in May 2006 to review Plaintiff's "Goals/Assignments/Standards." [Exhibit E]. The "Goals 2006" form indicates that with respect to gaining a working knowledge and understanding of the GAAP reporting process and preparation of other items, Plaintiff did an "[e]xcellent job - met deadlines, good research." *Id.* The form did not indicate poor performance or a failure to meet Defendant's expectations.

Based on the evidence she submits, the Court finds that Plaintiff establishes that she was qualified for her position as an accountant.

> **b.** **Was there a nexus between Plaintiff's pregnancy and her termination?**

In order to establish the nexus required by the fourth prong of the prima facie case, a plaintiff can show such things as temporal proximity between the defendant's learning of the plaintiff's pregnancy and the adverse decision, see *Asmo v. Keane, Inc*., 471 F.3d 588, 593-594 (6th Cir. 2006); or, show that "another employee who is similarly situated in her or his ability or inability to work received more favorable benefits." *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996).

Plaintiff relies on temporal proximity to establish her prima facie case of disparate treatment. Plaintiff directs the Court to the *Asmo* case, where the plaintiff alleged pregnancy discrimination. In *Asmo*, the court held that "[i]n early December 2001, [the defendant] decided to terminate Asmo's employment...[t]his was within two months of October 2001, when [the plaintiff's supervisor] learned that Asmo was pregnant...[t]his temporal proximity is sufficient to establish a link between Asmo's pregnancy and her termination for the purposes of a prima facie case." *Asmo*, 471 F.3d at 594. See also *DeBoer V, Musashi Auto Parts, Inc*., 124 Fed.Appx. 387, 391 (6th Cir. 2005)(court held that temporal proximity from August 24th when defendant learned of pregnancy to November 14th when defendant demoted the plaintiff was sufficient to establish a nexus).

In this case, Zimmerman testified that she "began to discuss the necessity of giving [Plaintiff] a verbal warning" with Moyer on May 11, 2006. [Motion, Zimmerman Dep. p.34]. However, Moyer testified that the decision to give a verbal warning occurred at a May 18, 2006 meeting with Zimmerman. [Response, Exhibit G, pp.144-145]. Plaintiff told Moyer she was pregnant for the first time on May 12, 2006. [Response, Exhibit G, p.105; Exhibit H, pp.6-7]. Plaintiff allegedly received her first verbal warning on May 30, 2006.

Plaintiff regrettably miscarried the pregnancy. Following her miscarriage, Plaintiff informed Moyer she was pregnant again on August 1, 2006. [Response, Exhibit g, p.233]. Although they allegedly pertained to prior incidents, Moyer did not begin keeping written notes of her issues with Plaintiff until August 2, 2006. *Id.* Plaintiff received her first written warning on August 7, 2006. [Plaintiff's Exhibit A, pp.19-22]. By September 18, 2006, Plaintiff's employment was terminated.

This evidence of the temporal proximity between Plaintiff informing Defendant of her pregnancy and Defendant's adverse employment decision is sufficient to establish a nexus for purposes of the prima facie case, pursuant to *Asmo*, *supra*. Although Zimmerman and Moyer allegedly began discussing giving a verbal warning prior to finding out Plaintiff was pregnant, the decision to give the warning was made after they were aware she was pregnant. With respect to Plaintiff's second pregnancy, it is undisputed that the written warnings and termination came after Plaintiff informed Moyer she was pregnant.

### 2. Legitimate nondiscriminatory reason

Defendant offers a legitimate nondiscriminatory reason for terminating Plaintiff's employment. Defendant alleges it gave Plaintiff several verbal and written warnings as part of its progressive discipline policy. Plaintiff's personnel file reflects several written warnings. [Plaintiff's Exhibit A]. Defendant also alleges Plaintiff had problems with attendance. Defendant asserts that on September 18, 2006, Plaintiff erroneously attempted to send out a package containing sensitive and confidential information. Plaintiff does not deny that she made the error. Thus, according to Defendant, in light of Plaintiff's several warnings about her performance and attendance, Plaintiff was terminated.

### 3. Pretext

Plaintiff relies on *Asmo*, *supra*. In *Asmo*, the plaintiff alleged pregnancy discrimination. She was terminated as part of a reduction in force approximately two months after telling her supervisor that she was pregnant. When the plaintiff told her supervisor and co-workers that she was pregnant over a conference call, her supervisor did not respond and quickly changed the subject back to business. The court found that "[t]he most significant evidence showing pretext is [plaintiff's supervisor's] conduct after Asmo announced she was pregnant..." *Asmo*, 471 F.3d at 594. "[Plaintiff's supervisor's] silence is evidence of pretext because it can be read as speculation regarding the impact of Asmo's pregnancy on her work, and an employer's speculation or assumption about how an employee's pregnancy will interfere with her job can constitute evidence of discriminatory animus." *Id.* at 595. The court also noted that the supervisor did not inquire into the accommodations the plaintiff would need in light of the extensive travel her position required. *Id.* at 594-595.

In addition to the plaintiff's supervisor's ambivalence towards the plaintiff's pregnancy, the *Asmo* court further noted that although the supervisor initially gave five reasons for his decision to terminate the plaintiff, two of those reasons were dropped. The two reasons that were dropped appeared to be false. The court held "[i]t appears that [the supervisor] offered any and all reasons that he could think of to justify his decision to Asmo, whether or not they were true." *Id.* at 596. Even though some of the other reasons given for her termination were true, the court held "[the defendant] does not argue that each factor alone would not have independently resulted in Asmo's termination, but rather that the factors taken collectively resulted in Asmo's termination...[t]hus, in order to survive summary judgment, Asmo need not show that all of the

19

factors articulated by [the defendant] are false but rather, only that some of the factors are false and a mere pretext for discrimination." *Id.*

Plaintiff presents evidence that Moyer said it was Plaintiff's "personal problem" that she was having morning sickness. [Plaintiff's Exhibit D, p.175]. Plaintiff also presents evidence that Moyer told Sherwitz that she believed Plaintiff wanted to use her pregnancy as an excuse not to work more hours or to lessen the hours that she was already working. [Plaintiff's Exhibit D, pp.163-164]. Zimmerman testified in her deposition that Moyer said she felt Plaintiff "was using her pregnancy as an excuse not to get her job done and work the required overtime." [Plaintiff's Exhibit C, p.112]. Additionally, Plaintiff testified that when she told Moyer and Zimmerman about the miscarriage of her first pregnancy, neither of them asked how she was doing, or expressed any sympathy. According to Plaintiff, they just told her to fill out the paperwork for her medical leave of absence. [Plaintiff's Exhibit H, pp.49-50]. Plaintiff also testified that Moyer wanted to count against Plaintiff's attendance record the time she took off following her miscarriage. [Response, Exhibit H, pp.55-56].

These comments are more indicative of animus regarding Plaintiff's pregnancy than the mere silence of the supervisor in *Asmo*. Thus, these comments are evidence of pretext pursuant to *Asmo*. In addition to the comments, Plaintiff also relies on the evidence outlined above with respect to Plaintiff's retaliation claim. Plaintiff claims the evidence shows that Moyer started making subjective and false complaints against her regarding her performance and attendance. Plaintiff also relies on the deposition testimony of her former co-worker Stacy Gaffke. Gaffke testified that around the time Plaintiff had her miscarriage and became pregnant again "[Moyer] began treating Gaytri differently...[s]he stopped saying hello to her in the morning...[h]er attitude

changed towards her...[s]he became more rude." [Plaintiff's Exhibit U, pp. 29-30]. Gaffke also testified that Zimmerman treated Plaintiff differently as well by "somewhat" ignoring her. [Plaintiff's Exhibit U, p.142].

Plaintiff has produced sufficient evidence of pretext to withstand summary judgment on her claim for pregnancy discrimination.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for summary judgment.

**IT IS SO ORDERED.**


**s/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated:  July 22, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on July 22, 2008, by electronic and/or ordinary mail.**

**s/Jennifer Hernandez**
**Case Manager**